[Cite as *State v. Lopez*, 2024-Ohio-4967.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

JUAN V. LOPEZ,

    DEFENDANT-APPELLANT.

CASE NO. 13-24-07

**O P I N I O N**

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

JUAN V. LOPEZ,

    DEFENDANT-APPELLANT.

CASE NO. 13-24-08

**O P I N I O N**

Appeals from Tiffin-Fostoria Municipal Court
Trial Court Nos. TRC 2300037 ABCD

Judgments Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Decision: October 15, 2024

APPEARANCES:

    *Michael G. Aird* and *Michael Stahl* for Appellant

**WALDICK, J.**

{¶1} Defendant-appellant, Juan Lopez ("Lopez"), brings these appeals from the January 31, 2024 judgments of the Tiffin-Fostoria Municipal Court. On appeal, Lopez argues that there was insufficient evidence presented to convict him of, *inter alia*, OVI, that his convictions were against the manifest weight of the evidence, that the trial court abused its discretion by permitting the State to recall a deputy to testify over objection, and that the State committed prosecutorial misconduct during closing arguments. For the reasons that follow, the judgments of the trial court are affirmed in part, and reversed in part.

*Background*

{¶2} On January 6, 2023, Lopez was charged in trial court case 23TRC00037(A)-(D) with OVI in violation of R.C. 4511.19(A)(1)(a), OVI with a Refusal in violation of R.C. 4511.19(A)(2)(a), Driving Under Suspension in violation of R.C. 4510.111(A)[1], and Failure to Yield in violation of R.C. 4511.43(A). In addition, a criminal complaint was filed that same date in trial court case 23CRB00019 for Failure to Disclose in violation of R.C. 2921.29(A)(1). All of the charges arose from the same incident. Lopez pled not guilty to the charges.

---

[1] Lopez was originally charged with Driving Under Suspension in violation of R.C. 4510.11; however, that charge was later amended to a violation of R.C. 4510.111(A).

**{¶3}** On April 20, 2023, Lopez proceeded to trial on all the charges. The trial was bifurcated, with the OVIs and the Failure to Disclose charges being tried to a jury, while the Failure to Yield and Driving Under Suspension charges were tried to the bench. Lopez was found guilty of all charges.

**{¶4}** On January 31, 2024, Lopez was sentenced to, *inter alia*, 180 days in jail on the OVI charge, with 150 days suspended. That same day, judgment entries were filed memorializing Lopez's convictions. It is from these judgments that Lopez appeals, asserting the following assignments of error for our review.[2]

### First Assignment of Error

**The trial court abused its discretion by allowing the State to recall Deputy Cantu, over objection, to add further testimony after he had been released and had the opportunity to speak with the prosecutor.**

### Second Assignment of Error

**The State committed prosecutorial misconduct when it improperly suggested that Mr. Lopez had a burden to prove his innocence.**

### Third Assignment of Error

**The convictions in this case are insufficient of evidence** [sic] **and the manifest weight of the evidence does not support the jury's verdict.**

---

[2] We note that Lopez has a petition for post-conviction relief pending in the trial court. Lopez requested a stay of this appeal until the petition was resolved; however, we denied the stay as we have concurrent jurisdiction in these circumstances pursuant to App.R. 6.

{¶5} For ease of discussion, we elect to address the assignments of error out of the order in which they were raised. Further, we note that he State did not file a brief in this matter. The Appellate Rules state: "if an appellee fails to file his brief within the time provided by this rule, or within the time as extended, he will not be heard at oral argument * * * and in determining the appeal, the court may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action." App. R. 18(C).

*Third Assignment of Error*

{¶6} In his third assignment of error, Lopez argues that there was insufficient evidence presented to convict him of all charges, and that his convictions were against the manifest weight of the evidence.

Standard of Review

{¶7} It is well established that "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380 (1997), paragraph two of the syllabus.

{¶8} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio

St.3d 259 (1991), paragraph two of the syllabus. Consequently, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 2013-Ohio-4775, ¶ 33.

{¶9} By contrast, when reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *Thompkins* at 387. In doing so, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* Nevertheless, when assessing a manifest-weight challenge, a reviewing court must allow the trier-of-fact appropriate discretion on matters relating to the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest weight standard, only in exceptional cases, where the evidence weighs heavily against the conviction, should an appellate court overturn the trial court's judgment. *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

Controlling Statute(s)

**{¶10}** Lopez was convicted of OVI in violation of R.C. 4511.19(A)(1), Driving Under Suspension in violation of R.C. 4510.111(A), Failure to Yield in violation of R.C. 4511.43(A), and Failure to Disclose in violation of R.C. 2921.29(A)(1). These statutory subsections read as follows:

[OVI]

(A)(1) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply:

(a) The person is under the influence of alcohol, a drug of abuse, or a combination of them.

[Driving Under Suspension]

(A) No person shall operate any motor vehicle upon a highway or any public or private property used by the public for purposes of vehicular travel or parking in this state whose driver's or commercial driver's license has been suspended pursuant to section 2151.354, 2151.87, 2935.27, 3123.58, 4301.99, 4510.032, 4510.22, or 4510.33 of the Revised Code.

[Failure to Yield]

(A) Except when directed to proceed by a law enforcement officer, every driver of a vehicle or trackless trolley approaching a stop sign shall stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection, or, if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it. After having stopped, the driver shall yield the right-of-way to any vehicle in the intersection or approaching on another roadway so

closely as to constitute an immediate hazard during the time the driver is moving across or within the intersection or junction of roadways.

[Failure to Disclose]

(A) No person who is in a public place shall refuse to disclose the person's name, address, or date of birth, when requested by a law enforcement officer who reasonably suspects either of the following:

(1) The person is committing, has committed, or is about to commit a criminal offense.

Evidence Presented

**{¶11}** Deputy Luke Cantu of the Seneca County Sheriff's Office testified that he was on duty in the early morning hours of January 6, 2023, in uniform and in a marked patrol car. Deputy Cantu testified that around 3:00 a.m. on January 6, 2022, he observed a "silver 2010 Ford Fusion driving on Township Road 1029" without its headlights on. (Tr. at 50). Deputy Cantu testified that the "vehicle then failed to stop for the stop sign at Township Road 1029 and Township Road 1028." (*Id*.) Deputy Cantu then began following the vehicle and he observed it fail to stop at another stop sign at Township Road 73. (Tr. at 50).

**{¶12}** Deputy Cantu testified that as he followed the vehicle he activated his overhead lights. He testified he never lost sight of the vehicle. Deputy Cantu testified that he observed the vehicle drive off the road and into the front yard of a residence. He then observed a man he later identified as Lopez exiting the driver's "position" of the vehicle along with two dogs.

{¶13} Deputy Cantu approached Lopez and asked Lopez for his name. Lopez refused to provide it "[i]n an aggressive manner." (Tr. at 53). Deputy Cantu asked Lopez to walk toward his patrol vehicle, and Lopez did, "in an unstable, as in a side-step manner." (*Id*. at 52). Deputy Cantu thought that Lopez's movement was possibly indicative of impairment.

{¶14} Deputy Cantu testified that Lopez initially had his phone in his hand and Lopez stated he was recording the interaction; however, Deputy Cantu told Lopez to place the phone on the hood of the patrol vehicle for officer safety. Deputy Cantu then instructed Lopez to stand with his back to the patrol vehicle. Deputy Cantu explained that he was going to have Lopez perform standard field sobriety tests; however, Lopez refused and stated that he had not done anything wrong and was not driving. Deputy Cantu learned that the vehicle was registered to a "Thomas Lopez" who did not match the physical description of Lopez.

{¶15} Deputy Cantu testified that during his interaction with Lopez, he observed Lopez to have "bright, glossy eyes" and "an odor of intoxicating beverage emanating from [his] person." (Tr. at 53-54). Deputy Cantu testified that due to Lopez's appearance and behavior, he was detained and placed into Deputy Cantu's patrol vehicle. Around that time, Sergeant Weimerskirch of the Seneca County Sheriff's Office arrived on location to assist.

{¶16} Deputy Cantu searched the vehicle he had seen Lopez driving and located an open Michelob ULTRA can that was sitting in the center console cup holder. The beer was half-full. Deputy Cantu testified that he later checked Lopez's driving record once he learned Lopez's identity and he discovered that Lopez was driving under suspension. (Tr. at 56).

{¶17} On cross-examination, Deputy Cantu clarified that Lopez did not "roll" through the stops sings, he "flew by them." (Tr. at 59). When asked if there were any recordings of the incident, Deputy Cantu testified that they did not have dash cameras in their vehicles at the time of the incident, and that he just got a body camera "about a month ago." (Tr. at 68). Deputy Cantu testified that Lopez was taken to the Sheriff's Office and offered a breath test, but Lopez refused. Notably, Deputy Cantu testified that he had never met Lopez before so he did not know what Lopez's eyes or his gait were like normally.

{¶18} The State next presented the testimony of Sergeant Chris Weimerskirch of the Seneca County Sheriff's Office. Sergeant Weimerskirch testified that he was called to assist in the traffic stop of the man who was later identified as Lopez. Sergeant Weimerskirch testified that when he arrived to assist with the situation, Lopez was already in the back of Deputy Cantu's patrol vehicle. Sergeant Weimerskirch testified that he tried to converse with Lopez to get information out of him and to find someone to get his dogs, but Lopez was

"argumentative." (Tr. at 80). Sergeant Weimerskirch noted that when he stuck his head in the window of the patrol car to talk to Lopez, he could "smell a strong odor of alcohol emitting form the back of the patrol vehicle." (*Id*.)

{¶19} On cross-examination, Sergeant Weimerskirch testified that he did not have a body camera at the time of the incident. He also testified that only a few patrol vehicles had dash cameras.

Analysis

{¶20} In arguing that the evidence did not support his convictions, Lopez contends that the evidence did not establish, or even "suggest," that he was impaired in this case. He argues that the fact that he was uncooperative did not suggest impairment. He argues that there was not body camera or dash camera footage illustrating his condition, and that the officers' testimony was not credible. We will address each of his convictions in turn.

{¶21} With regard to his Driving Under Suspension convictions, Lopez argues that there was no evidence that his license was under suspension at the time of the incident; however, a certified driving record was entered into evidence indicating that Lopez's license had been suspended indefinitely on November 11, 2022. Thus Lopez's argument is inaccurate and is unsupported by the evidence. Simply put, evidence was presented from which a reasonable factfinder could conclude beyond a reasonable doubt that Lopez was operating the vehicle on the

date in question and that he was driving under suspension. Therefore, there was sufficient evidence to support the Driving Under Suspension conviction, and because contrary evidence was not presented, the conviction was not against the manifest weight of the evidence.

**{¶22}** With regard to his Failure to Yield conviction, Lopez argues that there was no camera footage to support the officer's testimony that Lopez failed to stop at two stop signs. However, Deputy Cantu clearly testified that he observed a vehicle being driven by Lopez failing to stop at two stop signs. This constitutes sufficient evidence to support the conviction. The conviction is also not against the manifest weight of the evidence because the factfinder was free to determine Deputy Cantu's credibility and we will not second-guess that determination based on the evidence that was actually presented to the factfinder.[3] *See DeHaas*, *supra*. Therefore, Lopez's arguments related to his Failure to Yield conviction are unavailing.

**{¶23}** Lopez next argues that his Failure to Disclose conviction was not supported by the evidence. He argues there was "no testimony given that it would have been reasonable for any law enforcement officer to have suspected Lopez of committing or having committed a crime." (Appt's Br. at 15). This argument ignores Deputy Cantu's testimony that he observed a vehicle driving at 3:00 a.m. without

---

[3] Lopez argues that Deputy Cantu's testimony is not credible because Deputy Cantu testified that none of the officers had body cameras at the time of the incident and it later turned out that there was body camera footage from an officer who was not at the scene but who interacted with Lopez at the Sheriff's Office. This information was not presented to the factfinder to evaluate Deputy Cantu's credibility.

its headlights on, and driving through two stop signs without stopping. It also ignores Deputy Cantu's observations regarding the odor of an alcoholic beverage, Lopez's eyes, and his unsteady walking. Testimony regarding these issues all support Deputy Cantu suspecting Lopez of committing a crime. Thus this conviction is supported by sufficient evidence, and it is not against the manifest weight of the evidence.

{¶24} Finally, with regard to his OVI conviction, Lopez argues that the conviction was based on the testimony of Deputy Cantu, and the deputy's testimony should have been suspect because of his claim regarding there not being body camera footage of the incident. First, it is important to emphasize that the record does not establish that there was *any* body or dash camera footage from when Deputy Cantu interacted with Lopez at the scene. Deputy Cantu and Sergeant Weimerskirch testified that at the time of the incident they did not have body cameras and not all cruisers had dash cameras. The body camera footage actually came from a third officer who only interacted with Lopez once Lopez was brought to the Sheriff's Office. It is not clear that Deputy Cantu was ever aware that someone else had body camera footage from later in the day. However, there was some video footage from the Sheriff's Office depicting Lopez and his interaction with officers, but that footage, which both parties had, was not shown to the jury.

**{¶25}** Regardless, the body camera footage that evidently existed was never shown to the jury and thus the jury did not have this information before it to determine Deputy Cantu's credibility. To be certain, Deputy Cantu's credibility was an essential factor in this case; however, we are confined to the record before us and the video is not in our record and it was not presented to the jury.

**{¶26}** The evidence that was actually presented to the jury included testimony of Lopez driving at 3:00 a.m. without his headlights on and Lopez driving through multiple stop signs. Lopez had an odor of an alcoholic beverage emanating from his person. He had glossy eyes and an unsteady gait. The vehicle from which Deputy Cantu saw Lopez exit had an open, half-full beer can inside it. When analyzing all the facts in their entirety, we do not find that there was insufficient evidence presented to convict Lopez of OVI. Further, we do not find that the convictions were against the manifest weight of the evidence. As all of Lopez's convictions are supported by sufficient evidence, and are not against the manifest weight of the evidence, his third assignment of error is overruled.

*Second Assignment of Error*

**{¶27}** In his second assignment of error, Lopez argues that the trial court erred by permitting the prosecutor to make improper comments during closing arguments.

Relevant Authority

**{¶28}** The test for prosecutorial misconduct in closing arguments "is whether the remarks were improper, and if so, whether they prejudicially affected substantial rights of the defendant." *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). Thus prosecutorial misconduct is not grounds for reversal unless the defendant has been denied a fair trial. *State v. Maurer*, 15 Ohio St.3d 239, 266 (1984).

**{¶29}** Here, Lopez concedes he did not object to statements made during the prosecutor's closing argument, thus he has waived all but plain error. "A court recognizes plain error with utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice. *State v. Pilgrim*, 2009-Ohio-5357, ¶ 58.

**{¶30}** For an error to be "plain error" under Crim.R. 52(B), it must satisfy three elements: 1) there must be an error or a deviation from a legal rule; 2) the error must be "plain," meaning an obvious defect in the trial proceedings; and 3) the error must have affected "substantial rights," meaning the error must have impacted the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Specific to allegations of prosecutorial misconduct, under a plain error standard, a reviewing court asks whether a defendant would not have been convicted in the absence of the improper conduct. *State v. Abdullahi*, 2024-Ohio-418, ¶ 29 (10th Dist.).

-14-

Analysis

**{¶31}** In order to address Lopez's argument that the prosecutor committed misconduct during closing arguments, we must review the purported improper statement, which reads as follows:

> Also, I would argue, take into consideration the fact that the Defendant did not complete any field sobriety tests. He did not complete a breath tests. Those – if, if whether or not he was under the influence of alcohol was in question, State would argue those are, are *determining factors in proving innocence*."

(Emphasis added.) (Tr. at 98).

**{¶32}** Lopez argues that the preceding statement regarding proving his innocence was improper and prejudicial. He argues that it is particularly problematic here because this was not a case of overwhelming evidence of Lopez's guilt due to the fact that there were no field sobriety tests.

**{¶33}** While the Supreme Court of Ohio has stated previously that "isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning," *State v. Noling*, 2002-Ohio-7044, ¶ 94, the prosecutor's statements in this matter were not isolated. During rebuttal closing argument, the prosecutor stated:

> We heard evidence that there was an alcoholic container in the car open. We heard evidence that he did not identify himself and that he did not complete field sobriety tests *to prove* that he wasn't under the influence; or the breath test *to prove* that he was [sic] under the influence.

-15-

(Emphasis added.) (Tr. at 103).

{¶34} In the case *sub judice*, the trial was brief, consisting of only two witnesses. Closing arguments were similarly brief. The prosecutor's closing argument and his rebuttal closing argument totaled approximately three transcript pages. Of those three pages, the prosecutor used multiple portions of his argument to suggest that Lopez effectively had a burden to prove his lack of intoxication.

{¶35} After reviewing the statements of the prosecutor in closing arguments, we find that the statements were improper and could confuse a jury regarding the burden of proof. While the prosecution is generally not prevented from commenting upon the failure of the defense to offer evidence, directly implying that the defense had a burden to prove something is different. *See State v. Smith*, 14 Ohio St.3d 13, 14 (1984) ("To begin with, the prosecution must avoid insinuations and assertions which are calculated to mislead the jury."); *see also State v. Encarnacion*, 2017-Ohio-5530, ¶ 16 (holding that comments that *do not* imply a burden of proof has shifted to the defense are not improper); *c.f. Columbus v. Aleshire*, 2010-Ohio-2773, ¶ 44 (10th Dist.) (finding no error where the prosecutor's closing arguments did not imply that a burden of proof had shifted *and* the trial court provided an additional instruction after prosecutor's questionable comments to emphasize that the defendant had no burden of proof).

{¶36} However, finding that the prosecutor's comments in closing arguments were improper does not end our analysis. "An improper comment does

not affect a substantial right of the accused if it is clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments." *State v. Treesh*, 2001-Ohio-4.

**{¶37}** In assessing whether the prosecutor's comments impacted Lopez's substantial rights, we must look to the instructions provided to the jury to see if any potential confusion regarding burden of proof was cured. Here, the jury was instructed that it was the State's burden to prove Lopez's guilt beyond a reasonable doubt. *However, the jury was never instructed on the actual definition of reasonable doubt pursuant to R.C. 2901.05(A)/(C)/(E)*. Similarly, the jury was never instructed on the presumption of innocence afforded to criminal defendants. *State v. Schaeffer*, 2015-Ohio-3531, ¶ 89 (3d Dist.) (holding inadequate jury instructions can constitute plain error).

**{¶38}** We emphasize that R.C. 2901.05(C) *requires* the trial court to provide the definition of reasonable doubt to a jury. Since that was not done here, the jury was left with confusing and erroneous statements of the prosecutor regarding burdens of proof, and no specific guidance from the court on determining reasonable doubt. We find that the errors in this case rise to the level of plain error.

**{¶39}** Notably, plain error can be overcome if the convictions are supported by overwhelming evidence. *State v. West*, 2022-Ohio-1556. Here, while the evidence was strong enough to support the convictions, we do not find that the evidence is "overwhelming" such that it overcomes the errors. *See Schaeffer*, *supra*.

-17-

We therefore find that Lopez did not receive a fair trial on the OVIs and the Failure to Disclose charges that were tried to the jury. *See State v. Freeman*, 138 Ohio App.3d 408, 423 (1st Dist.2000) (finding that appellant was denied a fair trial where, *inter alia*, prosecutor made improper comments during closing arguments).

**{¶40}** However, we find that Lopez's Failure to Yield and Driving Under Suspension charges, which were tried to the bench, were not impacted by any erroneous comments of the prosecutor during closing argument or any failure of the trial court to instruct the jury on the definition of reasonable doubt. Lopez was found guilty of the two charges by the trial court before closing arguments occurred on the charges being tried to the jury and before instructions were provided to the jury. More importantly, in a bench trial, the trial court is "presumed to know the applicable law and apply it accordingly." *State v. Turner*, 2004-Ohio-5632, ¶ 15. Thus the errors herein did not impact Lopez's convictions that were tried to the bench.

**{¶41}** In sum, the prosecutor committed multiple instances of misconduct during closing arguments. We find that in this case, Lopez's substantial rights were affected by the prosecutor's comments, particularly because the jury was never properly instructed on the definition of reasonable doubt. Therefore, Lopez's second assignment of error is sustained in part. His convictions for OVI and Failure to Disclose are reversed, and those charges are remanded to the trial court for a new trial.

*First Assignment of Error*

**{¶42}** In his first assignment of error, Lopez argues that the trial court abused its discretion by permitting the State to recall Deputy Cantu to add additional testimony after he had been released as a witness. Deputy Cantu's testimony when he was recalled was related to the OVI charges. As we have sustained Lopez's second assignment of error and the case is being reversed and remanded for a new trial on the OVIs, Lopez's first assignment of error is moot and we decline to further address it.

*Conclusion*

**{¶43}** Having found error prejudicial to Lopez in some of the particulars assigned and argued, the judgments of the Tiffin-Fostoria Municipal Court are affirmed in part, and reversed in part. This case is remanded for a new trial on the OVIs and the Failure to Disclose charge.

***Judgments Affirmed in Part,***
***Reversed in Part and***
***Cause Remanded***

**WILLAMOWSKI, P.J. and MILLER, J., concur.**

**/jlm**